CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JEFFREY A. BACKHUS (CABN 200177)
Assistant United States Attorney

    60 South Market Street, Suite 1200
    San Jose, California 95113
    Telephone: (408) 535-5080
    FAX: (408) 535-5066
    jeffrey.backhus@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 22-00177 BLF |
|     Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | |
| MIGUEL ANGEL VARGAS, | Sentencing Date: June 17, 2025<br>Time: 9:00 a.m. |
|     Defendant. | |

## I.  INTRODUCTION

Miguel Angel VARGAS is an admitted Norteño gang member with, as described below, a significant criminal history. During two separate searches on September 12, 2019, VARGAS possessed, among other things, three firearms, over a pound of heroin, multiple pounds of methamphetamine, scales, drug packaging materials, a jail gang kite and over $12,000 in U.S. currency. VARGAS did not learn his lesson because, during another search on July 24, 2020, VARGAS possessed $3,840 in cash, another jail gang kite, 228 grams of heroin, 365 grams of methamphetamine, and a box of .357 caliber ammunition. At the time VARGAS possessed these items, he had sustained several prior felony convictions including convictions for domestic violence and drug trafficking and transportation/sales of

controlled substances.

Because of the methamphetamine, heroin, firearms and ammunition he possessed, VARGAS' total offense level after acceptance is 31. With a criminal history score of V, VARGAS' Guidelines range is 168-210 months. Probation and the defendant both recommend a significant downward variance to 96 months of imprisonment. Based on his criminal history and the aggravating facts of this case, the government sees no reason to depart from the Guidelines and recommends a sentence of 168 months of imprisonment as to Counts One through Six (concurrent) followed by a four-year period of supervised release as to Counts One, Two, Four and Five, and three-years as to Counts Three and Six, on the terms recommended by Probation.

## II.   FACTS

This case began with a car stop on February 20, 2019, during which approximately 113 grams of methamphetamine and $2,006 in U.S. currency was found on VARGAS' person. However, that case is outside the statute of limitations at the time of the Superseding Indictment and was not charged. The car stop did lead to the subsequent searches described below.

### A.   September 12, 2019 Searches

On September 12, 2019, members of the Monterey County Sheriff's Office ("MCSO") executed search warrants at two residences: (1) 11521 Poole St. #1, Castroville, California; and (2) 10481 Blevins Way, Castroville, California. MCSO Detectives believed that VARGAS lived at the Poole St. address but was selling controlled substances from both locations.

When MCSO Detectives arrived at the Poole St. residence, VARGAS and his then girlfriend Ruby Gonzalez were present. MCSO Detectives read VARGAS his *Miranda* warnings, which he waived. VARGAS stated that he lived at the residence, and that he placed a firearm under the dresser when he heard the police coming to the house. Upon conducting the search, the following items, among other things, were in the residence:

- $12,672 in U.S. currency in various denominations (the currency was recovered from several locations in the residence. $8,348 was found in a rainbow-colored bag on a dresser in the bedroom. $1,074 was located in a jacket in the closet, $3,250 was found in an open safe on the dresser);

- Approximately 1.1 pounds net weight of heroin (located in a safe found in the kitchen (VARGAS provided the code to open the safe));
- Multiple digital scales (located in the kitchen);
- Plastic baggies (located on top of a washer and dryer);
- Approximately 10 pounds net weight of methamphetamine (located in a grocery bag found in the bedroom next to the bed);
- A loaded Glock .45 caliber semiautomatic firearm (serial MPU179), which had been reported stolen (found underneath a dresser in the bedroom); and
- A Glock magazine with 10 .45 caliber rounds (located on a dresser in the bedroom).

Subsequent laboratory testing of the suspected heroin and methamphetamine revealed that the heroin consisted of 272.1 grams ± 0.2grams and the methamphetamine consisted of 2,576.1 grams ± 22.0 grams of actual methamphetamine.

Following the search, MCSO Detectives brought VARGAS back to the station for questioning. A Detective again read VARGAS his *Miranda* rights, which he waived. The Detective asked VARGAS how much narcotics he had in his possession. He stated that he had five pounds of "Chris" (Chrystal methamphetamine) and 20-30 pieces of "black" (heroin). VARGAS said a piece of black was equivalent to an ounce.

An MCSO Detective asked VARGAS what the price of a pound of methamphetamine was, and he said 14 to 15 hundred dollars. VARGAS said he was fronted the heroin in his possession and that he got all of the narcotics in his possession from his "pisa dudes from the valley." VARGAS would sell the methamphetamine for $2,000 per pound. According to MCSO Detectives, VARGAS also admitted to being an active Norteño gang member and to selling narcotics to other gang members.

Finally, VARGAS admitted to possessing two additional firearms at the Blevins Way residence.

A short time after the search of the Poole St. residence, MCSO Detectives executed a search warrant at the Blevins Way residence. Present at the time of the search were VARGAS' parents (Jaime and Ismeralda Vargas) and their daughter in law (Monze Pulido) and her young son. The Blevins Way residence belonged to VARGAS' parents but, as Jaime VARGAS explained, VARGAS, kept a room

there. VARGAS' father, Jaime, pointed the detectives to VARGAS' room. Inside VARGAS' room, an MCSO Detective located the following:

- A Glock, model 42, .380 caliber semi-automatic handgun, bearing serial number SCRM 684;
- A black bulldog nylon gun holster with a magazine pouch, which contained a 10 round .45 caliber magazine loaded with eight .45 caliber bullets;
- A Glock 10 round magazine, loaded with eight .45 caliber bullets;
- An HK empty 10 round magazine;
- A Perce Grip PG-42 Glock .380 caliber magazine, loaded with five .380 caliber bullets;
- A silver Junior Colt, .22 caliber semi-automatic handgun, bearing serial number 23974 CC, which was loaded with six .22 caliber bullets;
- Jail gang kite titles "LOGS," which contained notes of activities that had occurred in the K-pod and D-pod housing units at the Monterey County Jail. These housing units are used to house Norteño gang members and associates.

**B.     July 24, 2020 Search**

VARGAS was not deterred by the searches and his arrest on September 12, 2019. Not even a year later, on July 24, 2020, at approximately 4:30 p.m., members of the MCSO Investigation Bureau arrived to conduct a probation search at the Blevins Way residence, in Castroville, California. MCSO Detectives believed that VARGAS was still selling narcotics out of the Blevins Way residence. VARGAS was present at the location. The following items were in the residence:

- $3,840 in cash in a wallet under a pillow on a bed (located in VARGAS' bedroom);
- Indicia in VARGAS' name (located in VARGAS' bedroom);
- VARGAS' California Driver's License (located in VARGAS' bedroom);
- A jail gang kite referencing an individual by the moniker of 'Razor Bully' selling narcotics and being supplied by the Sinaloa Cartel. It also mentions having three individuals, Albert Sigala, Adrian Juarez, and Anthony Valencia, assisting in selling narcotics and the proceeds and contributions being forwarded to 'Droopy

De Castroville' ("Droopy" is VARGAS's gang moniker) (located in VARGAS' bedroom);

- Empty Ziploc bags (located in VARGAS' bedroom as well as the laundry room);
- A digital scale on washing machine covered in suspected heroin and methamphetamine residue (located in the laundry room);
- A small box above the wash machine and dryer containing approximately 46.5 gross grams of suspected heroin (located in the laundry room);
- A cardboard box across from washing machine and dryer contained suspected heroin and methamphetamine (approximately 228 gross grams of heroin and 365 gross grams of methamphetamine) (located in the laundry room);
- A large silver digital scale (located in the laundry room); and
- A box of .357 caliber ammunition located on the refrigerator in the laundry room.

Subsequent laboratory testing of the suspected heroin and methamphetamine revealed that the heroin consisted of 254.2 grams ± 0.2grams and the methamphetamine consisted of 329.6 ± 22.0 of actual methamphetamine.

An MCSO Detective contacted VARGAS and read VARGAS his *Miranda* rights. VARGAS stated that he understood his rights and agreed to talk to law enforcement. VARGAS was asked about the ounce of heroin above the washer, and VARGAS stated that it was a small amount, and he had to do what was necessary to pay back his debts from the last time MCSO arrested him and confiscated his narcotics. VARGAS stated that it has been hard for him to pay back his debt due to the rising drug prices caused by the Coronavirus pandemic.

The MCSO Detective also told VARGAS that a box containing heroin and methamphetamine was also located. VARGAS stated this was also part of the first amount that MCSO had located.

VARGAS said he had received a shipment the day prior, and this was all he had left. VARGAS said he had distributed the rest of the heroin and methamphetamine. VARGAS said he was smarter than that to have it at all at his house. The MCSO Detective told VARGAS the amount he had was enough for sales. VARGAS stated, "Yeah, but it's not that much."

VARGAS was asked how much methamphetamine and heroin he had purchased. VARGAS said he had got around a pound of each. VARGAS was asked how much he paid for it. He said the heroin was about $8,000 per half a pound, and the methamphetamine was $3,000 per pound. VARGAS was asked where the rest of it was, and VARGAS stated he got rid of it the previous day. VARGAS said he jumped on the deal because his supplier had fronted him the product ("fronted" refers to a supplier providing narcotics without payment, with the understanding that payment will be provided shortly thereafter).

### III. DISCUSSION

#### A. Sentencing Guidelines

The government's Guidelines calculations are as follows:

| | |
|---|---|
| Base Offense Level, U.S.S.G. § 2D1.1(a)(5) and (c)(4) | 32 |
| Specific Offense Characteristics § 2D1.1(b)(1) (Dangerous weapons (firearms) were possessed) | +2 |
| Acceptance of Responsibility, § 3E1.1 | -3 |
| Total Offense Level | 31 |
| Criminal History Category (0 points) | V |
| Total Range (in months) | 168-210 (60-month mandatory minimum) |

#### B. A 168-Month Sentence is the Reasonable and Appropriate Sentence in this Case

The government respectfully requests that the Court impose low-end Guidelines sentence of 168 months of imprisonment. This sentence is supported by the § 3553(a) factors: in particular, the history and characteristics of the defendant, promoting respect for the law, the seriousness of the offense, deterring future criminal conduct, and protecting the public.

The circumstances of the instant offense, as well as VARGAS' history and characteristics are extremely aggravating. In this case, VARGAS possessed firearms and significant quantities of methamphetamine and heroin on two separate occasions. The possession of weapons in addition to the drugs is extremely troubling. During this offense, VARGAS was acutely aware that his conduct was both illegal and dangerous but chose to do it anyway, heedless of the consequences of possessing and

distributing narcotics and possessing firearms in contravention of laws put in place to save lives and stop drug dealers from amassing deadly weapons.

VARGAS' criminal history is extensive and includes a crime of violence as well as drug trafficking and transportation/sales of controlled substances offenses. VARGAS' crime of violence conviction was 2006 felony conviction for Inflict Corporal Injury Spouse/Cohabitant, in violation of California Penal Code Section 273.5(a). *See* PSR at ¶ 47. VARGAS has drug related convictions including a His criminal history includes a 2001 conviction for Possession of Marijuana for Sale (11359 HS), a 2001 conviction for Transport/Sell Narcotic/Controlled Substance (11352 HS), a 2009 conviction for Transport/Etc. Controlled Substance (11379(a) HS), and 2011 convictions for Possess Narcotic Controlled Substance (11379(a) HS) and Participate in Criminal Street Gang (186.22(a) PC). *See* PSR at ¶¶ 45-49. VARGAS' criminal history spans most of his life, with his first conviction at age 19 and his last conviction at the age of 38. He also has numerous other arrests related to drug offenses that did not result in any convictions. *See* PSR at ¶¶ 58-63. Admittedly, the longest sentence VARGAS has received is four years. However, given his criminal history and extremely aggravating nature of his current statutes if conviction, the government believes that a significant increase in punishment is appropriate.

The government also believes that VARGAS is an ongoing danger to the community for several reasons. First, as discussed above, during the searches on September 12, 2019, and July 24, 2020, VARGAS is in possession of firearms in addition to narcotics. An armed drug dealer is absolutely a danger to the community.

Second, as evidenced by the narcotics, currency and indicia of sales recovered during the searches, the government believes that VARGAS has been supporting himself through drug trafficking and is likely responsible for putting large quantities of drugs into the community. This belief is supported by the fact that, during post-*Miranda* statements, VARGAS admitted that was selling drugs. As stated in the PSR, "[VARGAS] indicated he has been selling narcotics for most of his life, intermittently, and described his dealing as a roller coaster." PSR ¶ 15. Clearly, VARGAS had turned to drug trafficking to make a living. Drug trafficking creates a danger to the community, not only through the distribution of addictive controlled substances than can destroy families, but also

tangentially through the potential for crimes committed by addicts to support their habits. VARGAS contributed to these problems through his actions.

Third, VARGAS has significant ties to a large-scale criminal organization or cartel, and to a violent gang. VARGAS is a documented and admitted member of the Norteño criminal street gang, which is notorious for its use of violence against its enemies. In addition, as stated above, during the September 12 searches, law enforcement recovered a jail gang kite from one of VARGAS' residences entitled "LOGS," which contained notes of activities that had occurred in the Norteño housing units at the Monterey County Jail. During the July 2020 search, law enforcement recovered another jail gang kite from his residence that links him to the Sinaloa Cartel. The kite referenced an individual by the moniker of "Razor Bully" selling narcotics and being supplied by the Sinaloa Cartel. The kite also mentions having three individuals, Albert Sigala, Adrian Juarez, and Anthony Valencia, assisting in selling narcotics and the proceeds and contributions being forwarded to "Droopy De Castroville." Droopy is the gang moniker of VARGAS. VARGAS claims that he has now dropped out of the Norteño. The government hopes that this is true, but the evidence collected in this case shows his significant connections to the gang that simply don't just go away.

Fourth, VARGAS has a history of violating probation, parole and pre-trial release, which also makes him a danger to the community. For example, he was under a criminal justice sentence when he committed the conduct in the underlying offense. Criminal records also reflect he violated his probation/parole on multiple occasions (PSR at ¶¶ 43, 45, 47, 49, 50), including while on federal supervision with U.S. Pretrial Services (PSR at ¶ 6). VARGAS tested positive for cocaine on multiple occasions while under pretrial supervision, missed drug tests and failed to show up for counseling. (PSR at ¶¶ 6, 82). In March of 2024, he was found to be in possession of a device used to circumvent drug testing while at New Bridge Foundation's residential treatment program (PSR at ¶ 82). Clearly, VARGAS either cannot or will not abide by conditions imposed by the court which, given his criminal history, weapons possession and gang affiliation, makes him a danger to the community.

At the same time, the government recognizes VARGAS' difficult childhood, mental health challenges, substance abuse history and rehabilitative efforts. However, any mitigation is overcome by his extensive criminal background, the nature of the instant offenses and the danger he poses to the

community.

## IV. CONCLUSION

Given VARGAS' criminal history, serious prior gang activity and conduct in this case, the government believes that a 168-month sentence is appropriate. It reflects the seriousness of defendant's conduct, his criminal history, and the need to protect the public. It will also provide, the government hopes, a level of specific deterrence for the defendant that his previous sentences have not. Accordingly, the government recommends a sentence of 168 months of imprisonment as to Counts One through Six (concurrent) followed by a four-year period of supervised release as to Counts One, Two, Four and Five, and three-years as to Counts Three and Six, on the terms recommended by Probation.

DATED: June 11, 2025                               Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

            /s/
JEFFREY A. BACKHUS
Assistant United States Attorney